IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

RICHARD JOSEPH PHILLIP SCHOONOVER,    )
    Petitioner,    )
        )    Case No. 7:18-cv-203
v.    )
        )    By: Elizabeth K. Dillon
HAROLD CLARKE,    )        United States District Judge
    Respondent.    )

MEMORANDUM OPINION

Petitioner Richard Joseph Phillip Schoonover, a Virginia inmate proceeding *pro se*, filed

in this court two related petitions for writs of habeas corpus, pursuant to 28 U.S.C. § 2254. Each

one challenges the validity of his confinement resulting from a judgment of the Circuit Court for

Floyd County. In this case, Schoonover challenges his confinement as a result of his September

30, 2014 conviction for distribution of heroin as an accommodation, in violation of Virginia

Code § 18.2-248(D), which was the result of a guilty plea.[1] He was sentenced to ten years'

incarceration with six years, ten months suspended, resulting in an active sentence of three years

and two months.[2] (Case No. CR13-288.)

Respondent filed a motion to dismiss the petition, and Schoonover has responded,

making the matter ripe for disposition. After a careful review of Schoonover's claims, the court

concludes that the state court's decision as to the claims was neither contrary to, nor an

---

[1] The related case is *Schoonover v. Clarke*, Civil Action No. 7:18-cv-249. In that case, Schoonover challenges the state court's December 14, 2014 judgment revoking his probation and imposing the remainder of the suspended sentence on his larceny and burglary convictions, a total of four and a half years. (Case Nos. CR08000148-03, CR08000149-3, and CR08000150-03). The violation that led to the revocation and imposition of that sentence was Schoonover's conviction on the drug charge in CR13-288, challenged here.

[2] Even if Schoonover had completed his active sentence on this conviction at the time he filed his petition, his sentence also included a three-year term of probation. Thus, he was still considered "in custody" for purposes of § 2254 at the time he filed because "it is well-settled that an ongoing term of probation or parole is a sufficient restraint on a petitioner's liberty to allow the petitioner to attack a state sentence" under § 2254. *Mainali v. Virginia*, 873 F. Supp. 2d 748, 751 (E.D. Va. 2012) (citing *Jones v. Cunningham*, 371 U.S. 236, 242 (1963)).

unreasonable application of, clearly established federal law.  The court further concludes that the decision was not based on an unreasonable determination of the facts.

For these reasons, the court will grant the motion to dismiss.  The court also will deny Schoonover a certificate of appealability.

## I.    BACKGROUND[3]

Schoonover was indicted in Floyd County on charges of distribution of heroin and conspiracy to distribute heroin.  (Case Nos. CR13000287, CR13000288.)  In exchange for his guilty plea to the distribution charge, the Commonwealth agreed to *nolle pros* the conspiracy charge.  The parties also agreed upon a recommended sentence of ten years, with six years and ten months suspended, which is the sentence the court imposed.

At his guilty plea held on September 30, 2014, the government proffered that it could prove the following, if the case were to go to trial:

> This was part of a New River Task Force, Regional Drug Task Force operation. At that particular time, there was a cooperating individual who was wired and that particular individual was searched, found not to have any drugs or money. The individual was accompanied to the residence of the defendant by a special agent of the task force. The special agent waited in the vehicle while the CI went inside. The transaction took place. It was recorded. And the recording revealed that the CI had met a Hope Smith and that there was a transaction made where nine . . . bags of heroin were exchanged for $200. Prior to that, there was a conversation between the defendant and the CI where the defendant said to the CI that he had to turn himself in because he had some outstanding warrants but he would leave the heroin with Hope and that the CI could go by and pick it up and that the CI was told by Mr. Schoonover that Hope would not sell it to anyone else before the CI got there.[4] We were able to corroborate the fact that

³ Petitioner has attached many state court documents as exhibits to his petition, including transcripts and the decision of the habeas court.  (*See* Dkt. No. 1.)  The court cites to those where possible, using the ECF-generated page numbers for the petition.  Paper copies of the records from the Floyd County Circuit Court and from the appellate courts are on file with the Clerk.  Citations herein to "Habeas Rec." refer to records from the Floyd County Circuit Court in the state habeas case, CL16-118.  The page numbers refer to the handwritten numbers at the bottom of each page.

⁴ It does not appear that the referenced conversation between the CI and Schoonover was recorded.

> that was, in fact, the case that Mr. Schoonover turned himself in to the authorities before this transaction took place. So this is an accommodation and he would be an accessory before the fact to the accommodation.

(Pet. 33–34 (Guilty Plea Tr.).)

The plea colloquy reflects that Schoonover initially paused in answering the court's question as to whether he was entering the plea of guilty freely and voluntarily, and he failed to answer at all the question of whether he was, in fact, guilty of the crime charged. (*Id.* at 32–33.) As a result, the court took a recess in the proceedings to give Schoonover an opportunity to talk with his counsel. In the record are affidavits from Schoonover's family members and his girlfriend about what occurred during that meeting, as well as an affidavit from counsel. (*Id.* at 86–97; Habeas Rec. 387–89.) It is undisputed, however, that Schoonover returned to the courtroom and told the court that he wanted to go forward and that he was entering the plea of guilty because he was "in fact, guilty of the crime charged." (Pet. 34.)

Schoonover also had completed a written guilty plea questionnaire, and, after the recess, he told the judge that he had gone over "each and every question and answer" with his attorneys, that his answers to every question were true and correct, that it was his signature on the form, and that he was satisfied with his attorneys. (*Id.* at 37–38.) Among other responses on that form, he stated that no one had in any manner threatened him or forced him to enter his guilty plea, that no one had made any promises concerning his guilty plea, and that his attorney had not promised him anything. (Habeas Rec. 265–67.)

Schoonover now alleges that his guilty plea was coerced by his counsel at that time, James C. Turk, Jr., and by certain misrepresentations by Turk. The details of these assertions are discussed in the context of analyzing Schoonover's claims. (*See* Section IV.B. *infra*.)

After the guilty plea was entered and Schoonover had been sentenced, Schoonover contends that he asked Turk to file a motion to withdraw the guilty plea, but Turk refused to do

so.  Thereafter, Turk moved to withdraw and Schoonover hired new counsel, Flux Neo.  Neo filed a motion to withdraw Schoonover's guilty plea, but he did so one day after the deadline set forth in Virginia Code § 19.2-296.  Ultimately, the trial court denied the motion to withdraw the guilty plea, both because it was untimely and because there was no basis to allow withdrawal.

On December 9, 2014, the same date that the trial court denied the motion to withdraw his guilty plea, the court revoked Schoonover's probation and imposed the entire remainder of his previously suspended sentences in prior burglary and larceny cases. (Case Nos. CR08000148-03 through CR08000150-03).  The basis for the revocation was his conviction on the drug charge, which was a violation of the terms of his probation.  At that hearing, the Commonwealth did not argue that Schoonover should get no additional time, as Schoonover alleges that Turk had promised him the Commonwealth would do.

## II.  PROCEDURAL HISTORY

Schoonover appealed, in a single appeal, both the trial court's refusal to allow the withdrawal of the guilty plea and the trial court's decision revoking his previously suspended sentences, but the Virginia Court of Appeals denied his petition for appeal in a per curiam order entered September 9, 2015, and by a three-judge order entered October 19, 2015.  (Record No. 2297-14-3.)  The Supreme Court of Virginia ("SCV") refused his petition for appeal by order dated August 25, 2016.  (Record No. 151808.)  By order dated December 12, 2016, the SCV denied his petition for rehearing.  Schoonover filed a petition for certiorari in the Supreme Court of the United States, which was denied on June 19, 2017.  *Schoonover v. Virginia*, No. 16-8722, 137 S. Ct. 2271 (2017).

In September 2016, Schoonover timely filed a habeas petition in the Floyd County Circuit Court, *Schoonover v. Clarke*, No. CL16-118.  That petition raised four claims, many of them with subparts.  (Habeas Rec. 1–51 (state court habeas petition); *see also* Resp't Br. Supp.

Mot. to Dismiss 3–4, Dkt. No. 8 (listing claims).)  His first and fourth claims were ineffective assistance of counsel claims based on a number of different alleged actions or omissions by his counsel.  His second claim alleged due process violations arising from prosecutorial misconduct, certain pre-plea events, errors in the plea proceeding itself, and errors at the revocation hearing. In his third claim, he alleged that a fraud had been perpetrated on the court because someone on the drug task force had told the confidential informant to lie about Schoonover's involvement in the drug transaction.

As part of its response and motion to dismiss, the respondent included affidavits from the state prosecutor, Clifford F. Hapgood, from Turk, and from Floyd County Deputy Sheriff Chad Harris.  The habeas court denied and dismissed the habeas petition on January 31, 2017, without holding an evidentiary hearing.  (Habeas Rec. 545, 557–72.)

Schoonover appealed that judgment to the SCV.  (Record No. 170564.)  He moved the SCV to allow him to amend his petition to attach a purported transcript of a telephone call between him and Daniel Light, which motion was denied.[5]  The SCV refused the appeal of the habeas judgment by order entered March 30, 2018.  (Pet. 79.)  This federal petition followed.

## III.  CLAIMS

In his current timely petition, Schoonover raises four general grounds for relief.[6]  The specific details of each will be discussed in context in Section IV *infra*.  Here, the court sets out the general claims and sufficient detail to understand their scope.

In his first claim, Schoonover asserts that his guilty plea was involuntary, because it was

---

[5]  As discussed *infra*, this phone call relates to additional charges that Schoonover says he was threatened with if he did not plead guilty.

[6]  Respondent also refers to an "unnumbered paragraph" as asserting a fifth claim of cumulative error.  (*See* Dkt. No. 8 at 37.)  In the court's view, the allegations in that paragraph are not intended to assert a separate claim but simply summarize Schoonover's primarily allegations, especially those in his first claim.  In any event, respondent correctly notes that "cumulative" claims of ineffective assistance of counsel are not proper.  *See Mueller v. Angelone*, 181 F.3d 557, 586 n.22 (4th Cir. 1999); *Fisher v. Angelone*, 163 F.3d 835, 852–53 (4th Cir. 1998).

induced by threats, lies, and coercion. The threats, lies, and coercion all stemmed from alleged actions of his counsel, Turk, immediately preceding and during the recess in the guilty plea hearing.

In Schoonover's second claim, he alleges that Turk was ineffective based on four separate actions: (a) incorrectly advising Schoonover that the contents of a recorded jail conversation Schoonover had with Daniel Light would support charges of extortion, bribery, and/or witness tampering, and thus encouraging him to plead guilty in the drug case to avoid those charges; (b) representing to Schoonover that counsel had a "deal" with the Commonwealth (or for failing to memorialize it) in which, in exchange for Schoonover's guilty plea, the Commonwealth would not "argue against" him at the subsequent probation violation hearing; (c) failing to investigate the informant, who would have admitted to counsel that she lied about Schoonover's involvement in the drug transaction, just as she has subsequently admitted in a sworn affidavit; and (d) improperly advising Schoonover that his guilty plea precluded him from appealing the drug conviction.

Schoonover's third ground asserts that he was denied counsel at three separate times: (a) when Turk refused to represent Schoonover unless he accepted the plea agreement; (b) when Turk refused to file a motion to withdraw the guilty plea and instead filed a motion to withdraw as counsel, which resulted in Schoonover not having counsel during part of the 21-day period to file a motion to withdraw his guilty plea; and (c) when Turk told him he could not appeal and failed to appeal.

Schoonover's fourth ground is that there was a fraud committed upon the court because agents with the drug task force coerced the confidential informant to lie regarding Schoonover's involvement in the drug transaction.

IV. DISCUSSION

## A. Standards of Review

### 1. Exhaustion

Respondent acknowledges that Schoonover exhausted the claims in his petition because he presented them to the state habeas court, and the Supreme Court of Virginia denied his appeal of that judgment on the merits. Respondent contends, however, that the court should not consider two documents Schoonover has included in his federal petition that were not submitted to the state circuit court: Exhibits E and H. These are the purported transcripts of two telephone conversations: one between him and Daniel Light, and the second between him and his attorney, Turk. For support, respondent relies on *Kasi v. Angelone*, in which the Fourth Circuit explained that to meet the exhaustion requirement, a petitioner "must have presented to the state court both the operative facts and the controlling legal principles." 300 F.3d 487, 501–02 (4th Cir. 2002) (internal quotation marks and citation omitted). This court cannot consider the contents of those transcripts because they were not part of the official record that was before the habeas court. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (federal courts' review under § 2254(d)(1) is limited to "the record that was before the state court that adjudicated the claim on the merits").[7]

### 2. Merits standard of review

To obtain federal habeas relief, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). When reviewing a habeas corpus petition challenging a state conviction, federal courts employ a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Deyton v. Keller*, 682 F.3d 340, 344–45 (4th Cir. 2012) (citation omitted). Pursuant to the Antiterrorism and Effective Death Penalty Act

---

[7] Even if the court were to consider them, however, they do not alter the court's conclusions.

(AEDPA), a federal habeas court may only grant habeas relief "with respect to any claim that was adjudicated on the merits" in state court if the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2); *Deyton*, 682 F.3d at 345 (quoting same).

A state court decision constitutes an "unreasonable application" of clearly established federal law if the state court identifies the correct legal rule but unreasonably applies it to the facts of the particular case. *Williams v. Taylor*, 529 U.S. 362, 407 (2000). The "application must be 'objectively unreasonable'" before a court may grant habeas relief. *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citation omitted). Put differently, "[t]he question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Indeed, a federal court may not find "an unreasonable application of federal law unless the state court's decision lies well outside the boundaries of permissible differences of opinion." *Tice v. Johnson*, 647 F.3d 87, 108 (4th Cir. 2011) (internal quotation marks omitted). If the foregoing standard "is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Under the AEDPA standard, this court also must give deference to the habeas court's factual findings, in order "to further the principles of comity, finality, and federalism." *Sharpe v. Bell*, 593 F.3d 372, 379 (4th Cir. 2010) (citation omitted). In particular, "Section § 2254(e)(1) . . . reflects Congress's view that there is no reason for a do-over in federal court [as to] facts already resolved by state tribunals." *Id.* Under that provision, such factual findings "shall be presumed to be correct," and can be overcome only "by clear and convincing evidence." 28

U.S.C. § 2254(e)(1).

Similarly, if reviewing factual findings under § 2254(d)(2),[8] this court can disturb them only if they were based on an "unreasonable determination of the facts," which, as noted, is still "a substantially higher threshold" than a finding that the determination was incorrect. *Schriro*, 550 U.S. at 473.[9]

As to Schoonover's ineffective assistance of counsel claims, the court evaluates them under the familiar two-prong test delineated in *Strickland v. Washington*, 466 U.S. 668 (1984). To state a successful claim for ineffective assistance of counsel under *Strickland*, the petitioner must establish that (1) counsel's performance fell below an objective standard of reasonableness, such that counsel was not acting as the counsel guaranteed by the Sixth Amendment; and (2) but for counsel's objectively unreasonable performance, there is a reasonable probability the outcome of the trial would have been different. 466 U.S. at 687–91. There is no need "to address both components"; rather, if a reviewing court determines that the petitioner's claim fails on either the performance or the prejudice prong, the court's inquiry may stop there. *Id.* at 697.

In fairly evaluating an attorney's performance, "judicial scrutiny . . . must be highly

---

[8] *Brumfield v. Cain*, 135 S. Ct. 2269, 2282 (2015) ("We have not yet 'defined the precise relationship between § 2254(d)(2) and § 2254(e)(1),' *Burt v. Titlow*, 571 U.S. ___, 134 S. Ct. 10, 15 (2013), and we need not do so here.").

[9] Although Schoonover refers to being denied an evidentiary hearing in his state habeas case, the fact that the state habeas court did not hold an evidentiary hearing but instead relied primarily on affidavits does not alter this court's obligation to apply deference to the habeas court's findings under § 2254(d) and (e)(1). *Gray v. Zook*, 806 F.3d 783, 792–93 (4th Cir. 2015) ("A state habeas court need not hold an evidentiary hearing in every case to make reasonable fact determinations.") (citing *Strong v. Johnson*, 495 F.3d 134, 139 (4th Cir. 2007)); *Valdez v. Cockrell*, 274 F.3d 941, 951 (5th Cir. 2001) ("[W]e hold that a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review.") Here, moreover, the judge deciding Schoonover's habeas petition was the same judge who took his guilty plea, and he had presided over all the proceedings in the criminal case. Thus, in addition to having affidavits before him to consider, he also had the benefit of observing Schoonover at the guilty plea hearing and familiarity with counsel. *See Gardner v. Clarke*, No. 1:18-cv-1547, 2019 WL 3241171, at *7 (E.D. Va. July 18, 2019), *notice of appeal docketed*, No. 19-7116 (4th Cir. Aug. 1, 2019) ("[T]he fact remains that the same judge who oversaw [the petitioner's] trial and took his guilty plea also adjudicated his state habeas petition. When the judge adjudicated his habeas petition—which was filed just one year after the trial proceedings and plea colloquy—she was able to rely on her 'recollections of previous events.'").

deferential," and "every effort [must] be made to eliminate the distorting effects of hindsight . . . ." *Id.* at 689; *Yarbrough v. Johnson*, 520 F.3d 329, 337 (4th Cir. 2008). Thus, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. The court may adjudge counsel's performance deficient only when a petitioner demonstrates that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. As the Supreme Court has recently reaffirmed, the *Strickland* standard is "doubly deferential" in the context of a habeas petition, because the deferential review under AEDPA overlaps with the deferential standard under *Strickland*. *Woods v. Etherton*, 578 U.S. __,136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). Put differently, "federal courts are to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Woods*, 136 S. Ct. at 1151 (quoting *Burt v. Titlow*, 571 U.S. __, 134 S. Ct. 10, 13 (2013)).

In this case, because the Supreme Court of Virginia summarily refused Schoonover's petition for appeal, the reasoning that this court reviews is the circuit court's decision denying Schoonover's habeas petition. *See Wilson v. Sellers*, 584 U.S. __, 138 S. Ct. 1188, 1193 (2018).

## B.  Schoonover's Grounds for Relief

### 1.  Ground 1: Involuntary guilty plea

Schoonover points to a number of alleged actions by his counsel that he contends constituted threats, lies, and/or coercion, rendering his guilty plea involuntary. These are:

> a.  Turk told Schoonover that the Commonwealth's Attorney would charge him with extortion, bribery, and witness tampering if he did not plead guilty, but "[n]o action supported such charges."

> b.  Turk "cussed" Schoonover numerous times and pressured him into pleading guilty.

> c.  Turk lied to Schoonover and told him that he had a deal with the prosecutor that,

if Schoonover pled guilty to the drug offense, the Commonwealth would not "argue against" Schoonover or "recommend any time at the subsequent probation violation hearing." That promise was "either broken or never existed."

    d.    Turk told Schoonover that he would receive no more than two to three months at the probation violation hearing, but he received four-and-a-half years.

    e.    Turk threatened to quit during a break at the plea colloquy, told Schoonover he could speak to co-counsel (who had only recently entered the case), and added that he could not "f __ ing" help him if he would not accept the plea.

    f.    Turk used Schoonover's family to coerce him to plead guilty. Turk told Schoonover's mother, brothers, and girlfriend that he would be sentenced to 80 years in prison if he did not plead guilty. At Turk's urging, Schoonover's mother and girlfriend told him to plead guilty, and he did.

(Pet. 20–21.)[10]

The state habeas court addressed Schoonover's assertion that his guilty plea was involuntary because of counsel's actions and concluded that the claim was without merit. It addressed many of the specific alleged actions of counsel in regard to other claims and generally credited the affidavits of trial counsel and the prosecutor. In specifically addressing the voluntariness of Schoonover's plea, the court noted:

> In Claim A4, contrary to his testimony at the guilty plea hearing, Schoonover alleges that his plea was not voluntary, but was the product of coercion by trial counsel. The Court finds that Schoonover knew how to slow down, and even stop, the guilty plea colloquy, as the Court took a recess when Schoonover hesitated in his answers about the plea. When the hearing resumed after the recess, Schoonover did not advise the Court that he felt pressured to plead guilty; rather he stated his desire to proceed with the plea and his satisfaction with counsel. Mr. Turk states in his affidavit that both he and Mr. Shankman encouraged Schoonover to take the plea offer, but advised him that it was his decision. The Court further finds that while the petitioner now contends that Mr. Turk advised him he would receive an 80-year sentence if he went to trial, the prosecutor represented in his

---

[10] Many of the facts underlying this claim overlap with the allegations of ineffective assistance of counsel in Ground 2. As to those that do not overlap, then, it appears that Schoonover did not intend to assert them as separate ineffective assistance of counsel claims. Even if Schoonover had intended them to be ineffective assistance claims, however, the court has reviewed them and concludes that they do not entitle him to relief. For example, the assertion that Turk "cussed" at him, even if true, does not support an ineffective assistance of counsel claim because it fails to establish either *Strickland* prong.

> proffer on December 9, 2014, that Schoonover had a conversation
> the day of the plea hearing during which he acknowledged that he
> had avoided up to a 30-year sentence and that just the word
> "heroin" could have been enough to increase the sentence he
> would receive.

(Pet. 73.) Relying on *Anderson v. Warden*, 281 S.E.2d 885, 888 (Va. 1981), the habeas court

reasoned that a criminal defendant is bound by his statements at trial concerning the adequacy of

his counsel and the voluntariness of his plea, and it concluded that Schoonover had not presented

a "valid reason" why he should be allowed to "disavow" his sworn representations. (*Id.* at 68.)

The habeas court's reasoning is not an incorrect statement of federal law or an

unreasonable application of it. Although *Anderson* is not applicable in federal court, the Fourth

Circuit has similarly held that a petitioner is bound by his sworn statements during the plea

colloquy regarding voluntariness and counsel's performance. *See United States v. Lemaster*, 403

F.3d 216, 221 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances . . . allegations in

a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly

conducted Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'").

Likewise, Schoonover fails to show that the habeas court's factual determination of

voluntariness was "unreasonable," nor has he offered clear and convincing evidence that he was

forced, coerced, or misled into pleading guilty so as to overcome the presumption of correctness

afforded that determination. *See* 28 U.S.C. § 2254(e)(1).

At his plea colloquy, and after Schoonover had additional time to discuss whether to

plead with counsel, he told the judge that he could continue the colloquy where he left off, that

his guilty plea was voluntary, and that he was pleading guilty because he was in fact guilty. He

also stated under oath that he had truthfully answered all the plea questionnaire questions, which

included his responses that: his guilty plea was not the result of coercion or threats; he was

entering the plea of guilty freely and voluntarily; he decided for himself that he should plead

guilty; no one, including his attorney, had made any promises to him; he was satisfied with the services of his attorneys; and the plea agreement contained the full and complete agreement between him, his lawyer, and the Commonwealth. (Pet. 34, 37; Habeas Rec. 265–67.)

Moreover, counsel acknowledges that he and his co-counsel encouraged Schoonover to plead guilty, but he avers that they told Schoonover it was his decision. The habeas court credited counsel's assertion.

Furthermore, the habeas court had before it a proffer made by the Commonwealth regarding the motion to withdraw the guilty plea. In that proffer, the Commonwealth stated that there were multiple recorded calls between Schoonover and his girlfriend shortly *after* the guilty plea in which Schoonover expressed his belief that he had made the right decision in pleading guilty. Specifically, the prosecutor stated that the Commonwealth would have presented evidence that:

> [O]n the day of the acceptance of the plea agreement by the defendant in the court that Mr. Schoonover had several conversations with Grace [McCutchan]. In those conversations, he indicated that he felt that he had escaped a possibly long sentence up to at least thirty years, and that the word heroin by itself could have been enough to increase his sentence and that he was very satisfied with the sentence. He asked in the next conversation, which was slightly later, I think a little less than an hour, was his mom satisfied, and when Ms. [McCutchan] said that his mom was satisfied [and that] Ms. [McCutchan] was glad that she would be able to see him and that he would get out in a relatively short amount of time and that his mom was pleased that he would not spend the rest of his life in the penitentiary and she would be able to see her grandchildren, that he indicated that he, in fact, understood that and thought that he had done the right thing.

(Habeas Rec. 376-77.)

This evidence, too, undercuts Schoonover's assertion now that his guilty plea was not voluntary, and it is evidence that the habeas court relied on in its decision. (Pet. 73.) Quite simply, the fact that the following day, or days later, Schoonover had remorse or regrets about

his decision to plead guilty does not render that decision involuntary or the product of coercion.

Additionally, Schoonover's contention now that he did not want to plead guilty is undermined by the great benefit that he obtained in doing so, as recognized by him in those recorded conversations with Ms. McCutcheon. In terms of benefits, he had the conspiracy charge *nolle prossed*, the distribution charge reduced to an accommodation, and he received an agreed-upon active sentence of only three years two months. Noting these facts, as well as that Schoonover had a prior criminal record and was on probation at the time of the offense, the habeas court characterized the plea agreement as a "favorable" one "that limited the number and nature of convictions and sentence imposed." (Pet. 70.)

The evidence Schoonover presents, in addition to his own assertions, consists of affidavits of his family members and his girlfriend, which all echo his allegations that counsel said and did the things as accused by Schoonover, including stating that Schoonover could receive 80 years if he did not plead guilty, asking Schoonover's family members to tell him to plead guilty, and stating that the prosecutor would recommend no active time at Schoonover's subsequent probation revocation if he pled guilty. (Pet. 86–96.) From this, Schoonover contends that his plea was coerced and not voluntary. The court concludes, though, that the habeas court was not unreasonable in holding otherwise.

First of all, the affidavits are all from individuals with an obvious bias; thus, the court cannot say that the habeas court erred in crediting other evidence in the record over the affidavits. More importantly, countering these affidavits is the wealth of evidence discussed above that supports a finding of voluntariness: Schoonover's sworn statements, counsel's affidavit, the proffer of Schoonover's recorded conversation, and the favorable plea agreement itself.

Critically, this court is not tasked with deciding whether the state court's decision on the

matter was correct, but only whether the decision was "objectively unreasonable." On the current record, the habeas court's determination does not lie "well outside the boundaries of permissible differences of opinion." *Tice*, 647 F.3d at 108. Thus, this court will not disturb the habeas court's ruling on the voluntariness of Schoonover's plea.

**2. Ground 2: Ineffective assistance of counsel**

As noted, Schoonover advances four distinct claims of ineffective assistance, which the court addresses in turn.

*a. Advice concerning additional charges*

Claim 2(a) alleges that Turk was ineffective for telling Schoonover that he could be charged with bribery, extortion, and witness tampering based on his recorded jail conversation with Daniel Light. Specifically, according to Schoonover and his family members, Turk told Schoonover (on the day of his guilty plea) that the Commonwealth was considering additional charges against Schoonover, including extortion, bribery, and witness tampering, and that, if Schoonover would take the plea agreement, then the Commonwealth would agree not to charge him with those additional crimes. (Pet. 17.) The day after his plea, another lawyer told him that the contents of that call (as relayed by Schoonover) would not have constituted extortion, bribery, or witness tampering, (*id.* at 19), and Schoonover claims in his petition that the conversation did not support such charges. Thus, Schoonover alleges that this threat by Turk constituted ineffective assistance of counsel and caused him to enter an involuntary guilty plea.

In concluding that these allegations did not state an ineffective assistance of counsel claim, the habeas court explained:

> The Court rejects Schoonover's allegation that counsel misadvised him about a subsequent revocation hearing or the potential for additional charges. Mr. Turk asserts in his affidavit that he did not tell Schoonover that the Commonwealth would not argue for incarceration at a revocation hearing following his drug conviction. The prosecutor states in his affidavit that he did not make such a

15

promise to defense counsel. The prosecutor further states that, based on recorded jail conversations concerning witness intimidation, he had advised defense counsel that he believed an additional charge could be brought.

(Pet. 73.)

The habeas court's reasoning on this issue was not an unreasonable application of federal law nor an unreasonable determination of facts. First of all, the habeas court's reasoning that counsel was not deficient was not an unreasonable determination. Even if it is true that the contents of the recorded call would not support all (or any) of those charges,[11] both the prosecutor and Turk provided affidavits stating that the Commonwealth believed recorded calls from Schoonover in jail could support "a criminal charge" (Hapgood) or "charges" (Turk) and that the prosecutor had conveyed that fact to defense counsel. (Hapgood Aff. ¶ 5, Habeas Rec. 285; Turk Aff. ¶ 8, Habeas Rec. 388.) The possibility that new charges might be brought was a significant development in the case, and it was not ineffective for Turk to bring that possibility to Schoonover's attention. Indeed, it could have been be an important consideration in determining whether to plead guilty.

Moreover, in order to show *Strickland* prejudice, Schoonover would have to show that he would not have pleaded guilty if not for Turk's failure to properly advise him of the potential for these charges. *United States v. Broce*, 488 U.S. 563, 574 (1980) (to collaterally attack a guilty plea on the grounds of ineffective assistance, a petitioner must establish that counsel was ineffective and that, but for counsel's alleged errors, he would not have pleaded guilty). This is a showing he cannot make, for the same reasons already discussed with regard to the voluntariness of his plea. In short, the habeas court's ruling that his guilty plea was voluntary, which this court

---

[11] It is not proper for this court to base its decision on evidence not before the habeas court. *Cullen*, 563 U.S. at 181. Thus, the court's decision is not based on the contents of the purported transcript of the conversation. In any event, as respondent notes, Schoonover has not established that the potential charges were based only on that one conversation.

leaves undisturbed, effectively disposes of the prejudice aspect of this claim.

For these reasons, the habeas court's determination that Schoonover did not satisfy either prong of *Strickland* for this claim was not contrary to, or an unreasonable application of, federal law. Nor was it based on an unreasonable determination of the facts. Thus, relief is not available on this claim.

### b. *Promise of a deal as to probation revocation*

In Claim 2(b), Schoonover contends that Turk told him he had brokered a "deal" with the Commonwealth such that, if Schoonover pled guilty, the Commonwealth would not "argue against" him at his subsequent probation violation hearing.[12] The habeas court addressed this together with Claim 2(a). As noted above in discussing that claim, the habeas court expressly credited the prosecutor's affidavit in which he stated that there was no such deal. (Pet. 73 (habeas court's opinion explaining that Schoonover's claim was based on the "faulty premise that the prosecutor made a promise outside of the plea agreement").)

The habeas court thus rejected the contentions of ineffective assistance of counsel, explaining that Schoonover's assertions were belied by the affidavits of Turk and the prosecutor,[13] which the court credited and found "establish[ed] that there was no promise regarding the sentence that would be imposed, or requested, at any subsequent revocation hearing." (Pet. 74.) The court also found, consistent with counsel's affidavit, that "defense counsel did not predict for Schoonover what would happen at a subsequent revocation hearing."

---

[12] Alternatively, Schoonover alleged that if the deal existed, Turk was ineffective for failing to memorialize it. Crediting the habeas court's determination that there was no deal, there was nothing to memorialize.

[13] Turk's affidavit avers that "[t]he plea agreement did not include an agreement regarding any subsequent probation violation hearing," that the prosecutor did not promise that Schoonover would receive no time or that the Commonwealth would ask the court not to impose any active time, and that Turk "did not predict what would happen at a revocation hearing." (Habeas Rec. 388–89.) In his affidavit, the prosecutor, Clifford F. Hapgood, swore that "[t]he plea agreement did not address any future revocation hearing" and that he "did not tell defense counsel that the Commonwealth would not ask for prison time at a subsequent revocation hearing." (Habeas Rec. 285.)

(*Id.*)  And again, the habeas court explained that Schoonover's allegations were also belied by his statements during the plea colloquy.  Specifically, the court noted that the plea agreement itself recited that the agreement contained all of the terms of the parties' agreement, and Schoonover advised the court "that he had gone over each and every term of the agreement." (Pet. 73.)

Just as with Claim 2(a), the habeas court's decision is not contrary to federal law or an improper application of federal law.  Deferring to that court's factual findings, counsel was not ineffective and his performance did not fall "outside the wide range of professionally competent assistance."  *See Strickland*, 466 U.S. at 690.  Also, in order to show prejudice as a result of any ineffective assistance of counsel during the plea, Schoonover has to show that, but for counsel's statements, he would not have pleaded guilty.  For the same reasons already discussed in addressing the voluntariness of Schoonover's guilty plea, the habeas court reasonably concluded that no such prejudice could be shown.  Schoonover is not entitled to relief on this claim.

### c.  Failure to investigate the informant

In Claim 2(c), Schoonover claims that Turk was ineffective for failing to investigate the informant, Jodi Taylor.  He alleges that, had counsel done so, he would have discovered that Taylor was lying about Schoonover's participation in the offense, just as she has subsequently admitted in her sworn affidavit (Pet. 98–99).  Taylor's affidavit, which was also submitted to the state habeas court, was executed in October 2015.  In it, she avers that she was instructed by law enforcement to name Schoonover and that police threatened her with a gun charge if she did not implicate Schoonover.  (Pet. 98.)

In rejecting this claim, the state habeas again also relied on Schoonover's sworn statements to the court during the plea colloquy, which included "admission[s] of guilt . . . contrary to his . . . suggestion that Taylor falsely told the police that he was involved in the

crime." (Pet. 67.) The habeas court was entitled to credit Schoonover's sworn statements over the recantation of Taylor, and doing so was not contrary to federal law. *See, e.g.*, *Williams v. Coyle*, 260 F.3d 684, 708 (6th Cir. 2001) ("[R]ecanting affidavits are always viewed with 'extreme suspicion.'") (citation and internal quotation marks omitted); *see also United States v. Johnson*, 487 F.2d 1278, 1279 (4th Cir. 1973) (explaining that "where a motion for a new trial is based upon recantation of testimony given at the trial, such testimony is 'looked upon with the utmost suspicion'") (citation omitted)

Additionally, as to a failure to investigate, the record does not support that Turk did not investigate Taylor. To the contrary, the Commonwealth's proffer on the motion to withdraw the guilty plea disputes a failure to investigate: the prosecutor stated that it would have presented evidence that, during a pre-plea phone call between Schoonover and Turk, Turk conveyed that he had the names of the confidential informants and their criminal histories and that defendant himself knew of their criminal histories. (Habeas Rec. 377.)

As to the assertion that Taylor was threatened by task force agents to implicate Schoonover, moreover, that factual allegation also was rejected by the habeas court, who instead credited the sworn statement of Deputy Sheriff Chad Harris. (Pet. 67 ("The Court credits the sworn statement of Chad Harris and concludes that Taylor was not pressured by the police to falsely implicate Schoonover in the offense.").) The habeas court's conclusion was not contrary to or an unreasonable interpretation of federal law, nor were the facts unreasonably determined. Thus, the court concludes that the claim does not entitle Schoonover to relief.[14]

---

[14] The habeas court also found that Schoonover had waived the claim and that it was defaulted due to his failure to raise it on appeal, citing *Slayton v. Parrigan*, 205 S.E.2d 680, 682 (Va. 1974). *Slayton*, which held that a claim could not be brought in a state habeas petition if it could have been brought on direct appeal, "constitutes an adequate and independent state law ground for default" and such claims generally are procedurally barred from consideration on federal habeas. *Vinson v. True*, 436 F.3d 412, 417 (4th Cir. 2006).

### d. Incorrect advice concerning appeal

In Claim 2(d), Schoonover asserts that Turk improperly advised Schoonover that he could not appeal the drug conviction because he had pleaded guilty. Turk flatly denies telling Schoonover that and further denies that Schoonover ever directed him to appeal. Instead, Turk states that Schoonover wanted to get his case back before the circuit court. The habeas court noted Turk's sworn statements and found them credible. That factual finding is presumed to be correct and is entitled to deference, and Schoonover has not presented "clear and convincing" evidence to overcome that presumption, only his self-serving statements. Nor has he shown that it was an "unreasonable determination" of the facts. Thus, Schoonover is not entitled to relief on this claim.

### 3. Ground 3: Denial of counsel

In his third claim, Schoonover asserts that he was denied counsel at three times: (a) when Turk allegedly threatened to stop representing him if he did not plead guilty; (b) when Turk refused to file a motion to withdraw the guilty plea and instead moved to withdraw as counsel, which resulted in the late filing of Schoonover's motion to withdraw the guilty plea; and (c) on appeal.

The habeas court rejected the factual premises of all three of these claims. As to Claim 3(a), the habeas court's ruling that Schoonover pled guilty freely and voluntarily, which this court has already stated it will not disturb, is dispositive of this claim.

As to Claim 3(b), which concerns counsel's alleged failure to file a timely notice to withdraw Schoonover's guilty plea, the habeas court correctly noted that this claim fails because there was no prejudice. To establish prejudice, Schoonover would have to show a reasonable probability that the outcome of the proceeding would have been different had the motion been timely filed, *i.e.*, that the court would have granted the motion. This is clearly not the case.

As noted by the habeas court—who was the same judge who denied the motion—the motion to withdraw the guilty plea was denied both because it was timely and because it lacked merit. (Pet. 74–75, State Habeas Decision ("Although [the motion to withdraw the guilty plea] was not timely litigated, and the Court so found, the Court also made the alternative finding that Schoonover was not entitled to withdraw his plea.").)

The habeas court again noted in denying this claim that "based on the proffer of evidence in support of the motion to withdraw the guilty plea, Schoonover was not, as a matter of law, entitled to withdraw his plea." (Pet. 75; *see also* Habeas Rec. 372–78 (proffer).) That is, "Schoonover did not have a basis to demonstrate 'manifest injustice' for his post-sentence withdrawal of the plea." (*Id.*) Thus, Schoonover cannot demonstrate *Strickland* prejudice on this claim.

As to Claim 3(c), to the extent Schoonover is claiming that counsel failed to appeal, he cannot show that counsel was deficient. As to the former, the habeas court credited Turk's assertion that Schoonover never asked him to appeal, as already noted. The court will defer to that factual finding because it does not find it unreasonable, nor has Schoonover presented any clear or convincing evidence to contradict it. Because there was no deficiency, this claim fails under *Strickland*.

### 4. Ground 4: Fraud upon the court

Schoonover's fourth claim is that there was a fraud committed upon the court because agents with the drug task force coerced Taylor to lie regarding Schoonover's involvement in the drug transaction. This is based on the same allegations concerning Taylor's recantation of her prior statements to law enforcement as discussed in analyzing Claim 2(c). The habeas court found that this claim was both waived (as a result of Schoonover's guilty plea), defaulted pursuant to *Parrigan* because Schoonover failed to raise it on appeal, and without merit. (Pet.

67.) In addressing it on its merits, the court found that it was again contrary to Schoonover's admission of guilt in his plea colloquy, and the habeas court credited the sworn statement of Chad Harris, "conclud[ing] that Taylor was not pressured by the police to falsely implicate Schoonover in the offense." (Pet. 67.)

The same factual findings discussed in analyzing Claim 2(c), to which this court will defer in the absence of clear and convincing evidence to the contrary, also preclude relief on Ground 4. Thus, the court will deny relief on this claim.

## V. CONCLUSION

For the reasons stated, the court will grant respondent's motion to dismiss. Further, concluding that Schoonover has failed to make a substantial showing of the denial of a constitutional right as required by 28 U.S.C. § 2253(c)(1), a certificate of appealability will be denied.

An appropriate order will be entered.

Entered: September 30, 2019.


*/s/ Elizabeth K. Dillon*
Elizabeth K. Dillon
United States District Judge